UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SELECTIVE INSURANCE COMPANY OF AMERICA, | ) ) |
| | ) |
| Plaintiff, | ) ) |
| | ) No. 1:16-cv-00062-JMS-MJD |
| vs. | ) ) |
| SMILEY BODY SHOP, INC., JEFFREY  SMILEY, GREG  CALLAHAN, | ) ) ) ) |
| Defendants. | ) ) |
| ——————————————— | ) ) |
| CINCINNATI INSURANCE COMPANY, | ) ) |
| Intervenor Plaintiff, | ) ) |
| vs. | ) ) |
| SELECTIVE INSURANCE COMPANY OF AMERICA, SMILEY BODY SHOP, INC., JEFFREY SMILEY, GREG CALLAHAN, | ) ) ) ) ) ) |
| Intervenor Defendants. | ) ) |

**ORDER ON DISCOVERY MOTION**

Pending before the Court is Jeffrey Smiley and Smiley Body Shop, Inc.'s (collectively,

"Smiley") Motion for a Protective Order or, in the Alternative, to Stay Discovery.  [Dkt. 76.]

For the following reasons, the Court **DENIES** Smiley's Motion.

## I.  Background

This matter arises out of an insurance dispute.  The underlying state court lawsuit involves a tort action brought by Defendant Greg Callahan against Smiley after an automobile accident.  While defending Smiley in the underlying tort case subject to a reservation of rights, Plaintiff Selective Insurance ("Selective") brought suit in this Court seeking a declaration that it has no obligation to defend or indemnify Smiley under Smiley's insurance policy.  Selective now seeks discovery of the statements Jeffrey Smiley has made to his insurance providers, which Smiley contends are subject to insurer-insured privilege.  Smiley thus moves the Court for a protective order "prohibiting disclosure and excusing non-disclosure of information protected by the insurer-insured privilege" or, in the alternative, to stay discovery in this matter until the conclusion of the underlying tort action.  [Dkt. 76 at 1.]

## II.  Motion for Protective Order

Smiley's Motion seeks a protective order, not to keep his statements to insurance providers out of Selective's hands, but to ensure that Callahan—the plaintiff in the underlying state court action—cannot use them in the tort case.  In support, Smiley primarily relies upon the insurer-insured privilege recognized by the Indiana Supreme Court in *Richey v. Chappell*, 594 N.E.2d 443 (Ind. 1992).  In response, Selective argues that the insurer-insured privilege does not apply to this case and that, even if it did apply, Smiley waived the right to assert it through their conduct.  In reply, Smiley again argues that the privilege applies in this action as against Callahan.  Smiley reiterates that any other conclusion would undermine its assertion of privilege in the underlying action.

The Federal Rules of Civil Procedure limit discovery to nonprivileged materials that are relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). In diversity cases such as this one, the Federal Rules of Evidence incorporate by reference the privilege laws of the state providing the underlying substantive law. Fed. R. Evid. 501. Based upon their submissions, the parties appear to agree that Indiana law applies.[1] Regardless, "[c]ourts do not worry about conflict of laws unless the parties disagree on which state's law applies." *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991). As that is not the case here, the Court will apply Indiana privilege law in assessing Smiley's Motion. In so doing, the Court takes as axiomatic that evidentiary privileges are to be strictly and narrowly construed. *Shanabarger v. State*, 798 N.E. 2d 210, 215 (Ind. Ct. App. 2003) ("Inasmuch as [a] privilege prevents the disclosure of relevant information and impedes the quest for truth, the privilege should be narrowly construed."); *see Mem'l Hosp. for McHenry Cty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981) ("First, because evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed."); *see also Valero Energy Corp. v. United States*, 569 F.3d 626, 630 (7th Cir. 2009) ("This circumscribed reading of the tax practitioner-client privilege is in sync with our general take on privileges, which we construe narrowly because they are in derogation of the search for truth."); *Howard v. Dravet*, 813 N.E.2d 1217, 1222 (Ind. Ct. App. 2004) ("The attorney-client privilege should be narrowly construed because the privilege may prevent the disclosure of relevant information.").

---

[1] No party contends that the voluminous, 353-page insurance agreement that is the subject of this suit contains a provision requiring the application of the law of a different state.

The Indiana Supreme Court recognized the insurer-insured privilege in *Richey v. Chappell*, 594 N.E.2d 443 (Ind. 1992). *Richey* was a personal injury case in which the plaintiff sought discovery of statements made by the defendant to his insurance provider. Both the defendant and insurance provider objected to the request. The court reasoned that the privilege was required to facilitate candid disclosure from insured to insurer and thereby aid the insurer in its defense of the insured in the underlying liability cases:

> One of the primary duties placed upon insurers by the issuance of a liability insurance policy is the obligation to defend claims filed by third persons against the insured. In order to effectively defend the claim, the insured must be questioned about sensitive matters which may be embarrassing, incriminating, or detrimental to the insured. The failure to cooperate may invalidate coverage, and even an insured's constitutional right against self-incrimination may not override the insured's duty to cooperate with the insurance company. In connection with its obligation to defend claims, the insurance company retains an attorney, not usually of the insured's own choosing, to represent the insured. Statements from the insured are then used by the attorney to assist in the defense of the insured, just as statements given by plaintiffs to their own attorneys are used to assist in the prosecution. Uncertainty about whether the insured's statements are discoverable gives rise to a conflict about whether a statement should be given at all, and undermines what should be a cooperative relationship among the insured, insurer and attorney. An insured's relationship to the insurance company requires full disclosure by the insured without fear that the statement may be later obtained by the claimant.

*Id.* at 446. On this basis, the court "conclude[d] that in **third-party actions such as this one**"—*videlicet*, actions brought by non-insurer plaintiffs against an insured—"statements given by an insured to his insurance company are privileged and are not subject to discovery by the third party." *Id.* at 445 (emphasis added).

Unlike *Richey*, however, this matter is a "first-party" case brought by an insurer to determine its rights and liabilities vis-à-vis its insured. The Court finds that the *Richey* insurer-insured privilege does not extend to this first-party case and that the underlying tort plaintiff's status as party-defendant in this action does not change this conclusion. This is so

4

notwithstanding the seemingly broader language in *Richey* identified by Smiley. As Smiley points out, *Richey* also states that "statements from the insured to the insurer concerning an occurrence which may be made the basis of a claim by a third party are protected from disclosure." *Id.* at 447. But this language does not warrant the broad reading attributed to it by Smiley for several reasons.

First, the *Richey* court recognized that discovery of insurer-insured materials in "first-party" claims stands on a different ground than discovery in a third-party action. The court in fact expressly approved of the Indiana Court of Appeals' decision to compel discovery of insurer-insured statements in *Cigna-INA/Aetna v. Hagerman-Shambaugh*, 473 N.E.2d 1033 (Ind. Ct. App. 1985), reasoning that the rationale in that case was "sound" because "*Hagerman-Shambaugh* was a first-party claim involving an action by the insured against its insurer over whether a particular loss was covered by the policy . . . ." *Id.* at 447. *Hagerman-Shambaugh* is much more closely aligned with this case than *Richey*, again with the caveat that the tort plaintiff was not party to that case. But the *Richey* court distinguished its case from *Hagerman-Shambaugh* on the basis of the type of claim in that case. This case is a "first-party claim" over whether a claim is "covered by the policy"; it is not "a claim brought by a third party against the insured."

Second, other jurisdictions recognizing the insurer-insured privilege also make the distinction between third-party and first-party actions. The *Richey* court, for example, specifically endorsed the Illinois Supreme Court's approach to the privilege as an extension of attorney-client privilege, quoting at length from that court's decision in *People v. Ryan*, 197 N.E.2d 15, 18 (Ill. 1964). The Illinois Supreme Court has elsewhere explained that insurer-insured "documents may enjoy privileged status as to party opponents in the underlying

litigation, but they cannot be privileged from insurers who may bear the ultimate burden of payment. While the parties are now adverse concerning the issue of coverage, no such adversity exists as to the underlying litigation." *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322, 336 (Ill. 1991). The attorney-client privilege that may have applied in the underlying action had no applicability in the declaratory judgment action, suggesting that the insurer-insured privilege must likewise give way in this case. Again, *Waste Management* is not a perfect parallel to this case, as the underlying tort action had already settled in that case. But *Waste Management*—like *Richey*—distinguished the need for privilege in the underlying action from the absence of privilege in the declaratory judgment action on the basis of the type of claim.

Finally, this Court is "loathe to fiddle around with state law," *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 607 (7th Cir. 2000), and has repeatedly been admonished to "choose the narrower interpretation" of state law and "avoid speculation about trends in diversity cases," *Birchler v. Gehl Co.*, 88 F.3d 518, 521 (7th Cir. 1996). Particularly when this reluctance to unearth new realms of state law is coupled with the imperative that privileges be construed narrowly, the interests of furthering the truth-seeking mission of the Court must take precedence and dictate that the insurer-insured privilege not be expanded as Smiley suggests.

That the Court would be extending *Richey* if it ruled as Smiley requests is underscored by the fact that Smiley has not identified **any** first-party declaratory actions proscribing discovery of documents on the basis of insurer-insured privilege. Among the cases relied upon by Smiley are *Strack & Van Til, Inc. v. Carter*, 803 N.E.2d 666, 674 (Ind. Ct. App. 2004), a third-party case involving a slip-and-fall negligence action, and *In re Quantum Chemical/Lummus Crest*, No. 90 C 778, 1992 WL 71782, at *2–4 (N.D. Ill. Apr. 1, 1992), also a third-party tort case. *Quantum Chemical*, moreover, was limited to addressing the argument of a third party that the insured

waived attorney-client privilege by providing a document to its insurer.  1992 WL 71782, at *2 ("The issue in dispute is whether the privilege was waived by QUANTUM when it released Document 150 to various in-house staff members and counsel for its insurers.").  Neither of these cases is sufficiently analogous to affect the Court's conclusions.

While the policy which underlies the insurer-insured privilege of encouraging candid disclosures between insurer and insured is undoubtedly important, there are countervailing considerations as well.  The insurer "must be allowed to show that the so-called insured"—or the insured's claim—"is a stranger to the policy."  *Old Republic Ins. Co. v. Chuhak & Tecson, P.C.,* *84 F.3d 998, 1002 (7th Cir. 1996)* (Posner, C.J.).  In short, while there is ample case law establishing that the insurer-insured privilege applies to third-party lawsuits, there is no case (and certainly no Indiana Supreme Court case) extending its application to first-party lawsuits to determine the scope of an insurer's coverage.  This Court is constrained by precedent requiring privileges to be narrowly construed and by precedent requiring that the Court narrowly interpret novel state law.  The insurer-insured privilege **does not** apply to this case.

### III.  Motion to Stay Discovery

In the alternative, Smiley asks the Court to stay discovery while the underlying state-court action proceeds, arguing that discovery in this matter will prejudice his defense in the tort case.  Selective opposes a stay, arguing that it would be prejudiced thereby if forced to defend an action that it ultimately had no obligation to either defend or indemnify.  Selective further argues that the Stipulated Protective Order sufficiently addresses Smiley's concern of prejudice in the underlying case.  Selective maintains that the issues in this case are distinct from the issues of liability in the underlying case and that it seeks discovery solely regarding Smiley's employment relationship with the other parties and Smiley's potential breach of its insurance contract.  In

reply, Smiley argues that the protective order cannot prevent the use of information learned from this matter from being used in the underlying case. Smiley also argues that resolving the coverage issues in this case will involve the same facts as the underlying case.

A court may stay discovery through an exercise of its inherent authority to manage litigation or through its authority under Federal Rule of Civil Procedure 26(c). *See, e.g.*, *E.E.O.C. v. Fair Oaks Dairy Farms, LLC*, No. 2:11 CV 265, 2012 WL 3138178, at *2 (N.D. Ind. Aug. 1, 2012) (citing *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936)); *see also* Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."). The party seeking a stay has no absolute right to a stay; rather, that party "bears the burden of proof to show that the Court should exercise its discretion in staying the case." *Cloverleaf Golf Course, Inc. v. FMC Corp.*, No. 11–CV–190–DRH, 2011 WL 2838178, at *2 (S.D. Ill. July 15, 2011) (citing *Indiana State Police Pension Trust v. Chrysler LLC,* 556 U.S. 960, 961 (2009)).

To carry its burden, the movant must show that good cause exists for the stay in this specific case; the good cause determination encompasses factors such as whether the stay will prejudice the non-movant, whether the stay will simplify the issues in the case, and whether the stay will reduce the burden of litigation for the parties or the court. *Fair Oaks Dairy Farms,* 2012 WL 3138108, at *2 (citing *Abbott Laboratories v. Matrix Laboratories, Inc.,* 2009 WL 3719214, *2 (N.D. Ill. 2009)) ("[The Court should] balance interests favoring a stay against interests frustrated by the action in light of the court's paramount obligation to exercise jurisdiction timely in cases properly before it."). District courts have "*extremely broad discretion*" in weighing these factors and in deciding whether a stay should

issue. *Cloverleaf*, 2011 WL 2838178, at *2 (emphasis in original) (citing *Crawford–El v.*

*Britton,* 523 U.S. 574, 598 (1998)).

The Seventh Circuit has addressed specific factors that courts should consider when faced

with a motion to stay in the context of a declaratory judgment action where an underlying

liability action is pending:[2]

> [T]he federal court should consider (among other matters) whether the declaratory
> suit presents a question distinct from the issues raised in the state court
> proceeding, whether the parties to the two actions are identical, whether going
> forward with the declaratory action will serve a useful purpose in clarifying the
> legal obligations and relationships among the parties or will merely amount to
> duplicative and piecemeal litigation, and whether comparable relief is available to
> the plaintiff seeking a declaratory judgment in another forum or at another time.

*Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir. 1995).  This inquiry requires "review[ing]

the overlap between the federal and state proceedings in light of the substantive law that

informed the declaratory judgment action and the underlying liability case."  *Med. Assur. Co. v.*

*Hellman*, 610 F.3d 371, 379 (7th Cir. 2010) (Wood, C.J.).

Mere factual overlap is insufficient to demonstrate that a stay is required under *Medical*

*Assurance*.  In that case, the insurance company sought a declaration that it had no duty to

defend the defendant in an underlying medical malpractice case because the defendant breached

his duty to cooperate under the insurance policy.  *Id.* at 380.  This inquiry undoubtedly

overlapped with the underlying merits in the malpractice case; "[i]n Indiana, . . . an insurer

cannot prevail on that theory unless it can show that the breach resulted in actual prejudice" on

the merits.  *Id.* (citing *Employers Mut. Cas. Co. v. Skoutaris*, 453 F.3d 915, 924 (7th Cir. 2006);

*Ky. Nat'l Ins. Co. v. Empire Fire & Marine Ins. Co.,* 919 N.E.2d 565, 585–87 (Ind. Ct. App.

---

[2] To the extent Smiley relies upon case law from other jurisdictions setting out other tests for making such
a determination in this context, this Court rejects them as the Seventh Circuit, which binds this Court, has
spoken on the issue.

2010).  The potential factual overlap was of minimal importance because the legal issues were distinct.  In fact, the court observed that the continuation of the ongoing state proceedings "may provide guidance to the parties and the court in resolving the actual-prejudice inquiry."  *Id.* at 381.

Under *Zavalis* and *Medical Assurance*, it is clear that Selective's claim that it has no duty to defend Smiley does not "overlap" with the underlying action as the court used that term. Whether Selective can prove that Smiley failed to cooperate turns on distinct legal issues from whether Smiley is ultimately liable in tort for the automobile accident.  Smiley additionally argues that Selective's coverage arguments regarding Smley's employment relationship to the other parties involves overlapping issues, as Callahan has asserted a respondeat superior claim in the underlying case.  But even if some of the facts used to determine whether Selective must defend Smiley overlap with the respondeat superior determination, "the scope of [Smiley's] insurance coverage is not at issue in the state court actions."  *Medical Assur. Co.*, 610 F.3d at 381.  Smiley does not contend that the respondeat superior inquiry is legally identical to the scope of insurance determination, and this Court declines to assume that it is.  Moreover, Selective is entitled to challenge its claim to coverage based upon the employment relationship with facts, such as Smiley's statements to Selective, which would be privileged in the underlying case.  Thus, the factual records and perhaps even the factual issues with regard to the respondeat superior claim and the coverage litigation will also be distinct.

Several other *Zavalis* factors also weigh against a stay.  Determining Selective's duties to Smiley on the complete record "will serve a useful purpose in clarifying the legal obligations and relationships among the parties."  52 F.3d at 692.  Further, "comparable relief" will not be available to Selective if this case is stayed because it would then be required to defend the

10

underlying case without the opportunity to show that it had no duty to do so.  *Id.*  As the Seventh

Circuit has explained:  "The purpose of the Declaratory Judgment Act is to facilitate efficient

outcomes. Here, that purpose is best effected by allowing [Selective] to go forward with its

challenge to its duty to defend" because the issues raised by its challenge are "sufficiently

distinct" from the issues on the merits of the tort case.  *Medical Assur. Co.*, 610 F.3d at 381.

Though Seventh Circuit precedent on stays in declaratory judgment actions provide no

basis to stay this case, this Court may still order a stay under its inherent authority if Smiley can

demonstrate good cause.  This good cause determination must take into account any prejudice

that Selective may suffer.  As Selective points out, a stay of discovery in this case would

preclude Selective from contesting its obligation to provide Smiley's defense until **after** it has

already provided said defense in the underlying suit.  Thus, a stay would undoubtedly prejudice

Selective.

As to Smiley, without a stay, Callahan will receive some information that he has no right

to use in the underlying case—both under the insurer-insured privilege, which all parties agree

applies in that case, and under the stipulated protective order in this case.  The stipulated

Protective Order in this case provides:  "Information that is produced or exchanged in the course

of this action and designated under this Order may be used solely for the preparation, trial and

any appeal of this action, as well as related settlement negotiations, and **for no other purpose**,

without the written consent of the Designating Party."  [Dkt. 74 at 4 (emphasis added).]  This

Protective Order minimizes any prejudice that Smiley may suffer as a result of disclosure of the

insurer statements and of deposition questions referring thereto.  Further minimizing the

prejudice, as represented by Selective and uncontested by Smiley, is the fact that discovery

appears to be closed in the underlying case.  [*See* Dkt. 78 at 13.]  The Protective Order in this

case would foreclose even the possibility of reopening discovery in the underlying case based on information learned from the insurer statements or deposition testimony about the statements, and the Court declines to assume that any party will violate the terms of the Protective Order.

The cases to which Smiley cites do not suggest that this is the incorrect result. *Old Republic*, for example, reasoned that no discovery in the declaratory judgment action was required because the insurance company's responsibility for defending the tort defendant was apparent from the face of the complaint. 84 F.3d at 1002 ("But no one reading Kearns's complaint would so doubt that Josephson had represented Kearns in the course of Josephson's employment by Chuhak & Tecson as to be justified in putting Josephson and the law firm to the expense of responding to requests for discovery."). Such facial clarity is absent here.

Both *Wells Dairy, Inc. v. Travelers Indemnity Co. of Illinois*, 241 F. Supp. 2d 945 (N.D. Iowa 2003), and *Montrose Chem. Corp. v. Superior Court*, 861 P.2d 1153 (Cal. 1993), involved a stay of all proceedings "[t]o eliminate the risk of inconsistent factual determinations." *Montrose*, 861 P.2d at 1162; *Wells Dairy*, 241 F. Supp. 2d at 977 ("Thus, a stay is warranted to protect Wells from being prejudiced by inconsistent factual determinations."). Smiley makes no argument that it may face inconsistent factual determinations if there is no stay of discovery in this case and instead focuses solely on the prejudice that it will suffer in its defense if discovery proceeds.

Finally, in *American Family Mutual Insurance Co. v. Williams*, the court stayed discovery based upon the pendency of fully-briefed dispositive motions—not based on the defendants' claim of interference with insurer-insured privilege. No. 1:14-CV-248-SEB-DKL, 2015 WL 1421101 (S.D. Ind. Mar. 27, 2015). In fact, the court directed the parties to "move for

a case-management conference" "[i]f and when the Court denies the motions," and otherwise denied the defendant's motion to stay discovery without prejudice.

*H.G. Christman Construction Company, Inc. v. Amerisure Mutual Insurance Co.* is equally inapposite, as the Minute Entry to which Smiley cites granted an **unopposed** motion to stay discovery in one sentence, pending the resolution of a motion to dismiss.  Order on November 18, 2005 Telephonic Status Conference and Order Settling Settlement Conference and Related Deadlines, *H.G. Christman*, No. 1:05-cv-0743-DFL-TAB (S.D. Ind. Nov. 22, 2005), ECF No. 33.  The Minute Entry from *H.G. Christman* clearly has no persuasive value in this case.

Smiley has failed to meet its burden of demonstrating the appropriateness of a stay in this case.  The protective order largely mitigates any possible prejudice to Smiley, whereas a stay of discovery would cause significant prejudice to Selective.  The Court declines to assume that any party would violate the Court's protective order and use, in any way, the information learned from this case to further its cause in any other case, including the underlying tort case between Smiley and Callahan.

### IV.  Conclusion

The evidence sought is concededly relevant to the merits of this case and, as the Court has explained, is not privileged in this lawsuit.  It is also concededly privileged in the underlying tort action; Callahan has no right to use, and is prohibited by the Protective Order from using, any information gleaned from the insurer's statements or any deposition statements based thereon in the underlying case.  These propositions are not mutually exclusive.  In so concluding, the Court reiterates that the Protective Order in force provides that **no information provided in discovery or otherwise learned from this case may be used in any other matter.**  With this

13

understanding, the Court **DENIES** Smiley's Motion for a Protective Order or, in the Alternative,

to Stay Discovery.  [Dkt. 76.]

      SO ORDERED.

Dated:  27 OCT 2016

                                        Mark J. Dinsmore
                                        United States Magistrate Judge
                                        Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system.