UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SELECTIVE INSURANCE COMPANY OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | No. 1:16-cv-00062-JMS-MJD |
| vs. | ) ) | |
| SMILEY BODY SHOP, INC., JEFFREY SMILEY, and GREG CALLAHAN, | ) ) ) | |
| Defendants, | ) ) | |
| _____ | ) ) | |
| CINCINNATI INSURANCE COMPANY, | ) ) | |
| Intervenor Plaintiff, | ) ) | |
| vs. | ) ) | |
| SELECTIVE INSURANCE COMPANY OF AMERICA, SMILEY BODY SHOP, INC., JEFFREY SMILEY, and GREG CALLAHAN, | ) ) ) ) | |
| Intervenor Defendants. | ) | |

## ORDER

On February 26, 2015, Defendants Jeffrey Smiley and Greg Callahan were riding in a

pickup truck owned by Defendant Smiley Body Shop, Inc. ("SBS") when they were involved in a

single car accident. Mr. Callahan was injured in the accident, and filed a lawsuit in Indiana State

Court against Mr. Smiley, SBS, and General Motors, LLC (the "Underlying Lawsuit"). Plaintiff

Selective Insurance Company of America ("Selective") agreed to defend Mr. Smiley and SBS in

the Underlying Lawsuit pursuant to an insurance policy it had issued to SBS, although it did so

under a reservation of rights. In January 2016, Selective initiated this litigation seeking a

1

declaration that it does not owe a duty to defend or any coverage to Mr. Smiley or SBS in connection with the Underlying Lawsuit. Additionally, Cincinnati Insurance Company ("Cincinnati"), which issued an automobile insurance policy and an umbrella liability policy to Mr. Smiley and his wife, has intervened in this litigation and requests a declaration that neither policy provides coverage for the Underlying Lawsuit. All parties have moved for summary judgment, [Filing No. 88; Filing No. 90; Filing No. 93], and the motions are now ripe for the Court's decision.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the

suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

"The existence of cross-motions for summary judgment does not, however, imply that there are no genuine issues or material fact." *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engineers*, 335 F.3d 643, 647 (7th Cir. 2003). Specifically, "[p]arties have different burdens of proof with respect to particular facts; different legal theories will have an effect on

which facts are material; and the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail without a trial." *Id.* at 648.

## II.
### STATEMENT OF FACTS

**A. The Selective Policy**

Selective issued Policy No. S 103647007 to SBS, doing business as Chameleon Carts, with a policy period of January 31, 2015 to January 31, 2016 (the "Selective Policy"). [Filing No. 88-2.] Subject to several exclusions, the Selective Policy provides:

- "Business Auto Coverage," which provides that "[Selective] will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'." [Filing No. 88-2 at 32.]

- "Commercial Umbrella Liability Coverage," which provides that "[Selective] will pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies…." [Filing No. 88-2 at 53.][1]

**B. The Cincinnati Policies**

Cincinnati issued Automobile Policy No. A01 0637093 to Mr. Smiley and his wife, Mary Smiley, with a policy period of August 1, 2014 to August 1, 2015 (the "Cincinnati Auto Policy"). [Filing No. 93-3.] Subject to exclusions, the Cincinnati Auto Policy provides coverage "[w]hen a 'covered person' becomes legally responsible because of an auto accident or for physical damage to a 'nonowned auto'…." [Filing No. 93-3 at 9.]

---

[1] The Selective Policy also provides "Commercial General Liability Coverage," but SBS and Mr. Smiley state in their brief in support of their Motion for Summary Judgment that they "are not requesting coverage for the Underlying Lawsuit under the 'Commercial General Liability Coverage' Part." [Filing No. 92 at 3.]

Cincinnati also issued Personal Umbrella Liability Policy No. U01-0637093 to Mr. and Mrs. Smiley with a policy period of August 1, 2014 to August 1, 2015 (the "Cincinnati Umbrella Policy"). [Filing No. 93-5.] The Cincinnati Umbrella Policy provides coverage, subject to policy exclusions, for "'ultimate net loss' which the 'insured' is legally obligated to pay as damages for 'bodily injury' arising out of an 'occurrence' to which this insurance applies…[w]hich is in excess of the 'underlying insurance'; or…[w]hich is either excluded or not covered by 'underlying insurance.'" [Filing No. 93-5 at 12.]

### C. The Accident, the Insurance Claims, and the Underlying Lawsuit

On February 26, 2015, Mr. Smiley was driving a 2006 Chevy Silverado, which was owned by SBS, and Mr. Callahan was a passenger. [Filing No. 88-3 at 47-48; Filing No. 88-10 at 14.] They were travelling to a Recreational Vehicle ("RV") parts store in Elkhart, Indiana to pick up parts that Mr. Smiley had ordered the month before, when they were involved in a single-car accident. [Filing No. 88-3 at 49; Filing No. 88-10 at 14.]

Mr. Smiley reported the accident to Selective on March 2, 2015, and initiated a claim for coverage under the Selective Policy. [Filing No. 88-2; Filing No. 88-18.] On March 4, 2015, SBS reported Mr. Callahan's injuries to its workers' compensation carrier, NorGUARD Insurance Company ("NorGUARD"). [Filing No. 88-12.] NorGUARD denied coverage, after a brief investigation, on April 16, 2015. [Filing No. 88-19.] Its explanation for the denial stated "NO EMPLOYEE, EMPLOYER RELATIONSHIP, AND/OR INJURY DID NOT ARISE OUT OF AND IN THE COURSE OF EMPLOYMENT WITH SMILEY BODY SHOP, LLC." [Filing No. 88-19 at 2.]

In the meantime, Mr. Callahan initiated the Underlying Lawsuit against SBS and Mr. Smiley and Selective provided a defense for both under a reservation of rights. [Filing No. 88-

18.] SBS obtained summary judgment in the Underlying Lawsuit on November 29, 2016, and is no longer a party to the Underlying Lawsuit. Mr. Smiley, however, remains a defendant in the Underlying Lawsuit.

### D. The Coverage Lawsuit

Selective filed its Complaint for Declaratory Judgment on January 6, 2016, [Filing No. 1], and filed the operative First Amended Complaint for Declaratory Judgment against SBS, Mr. Smiley, and Mr. Callahan on January 13, 2016, [Filing No. 10]. In its Amended Complaint, Selective points to several exclusions in the Selective Policy that it alleges preclude coverage, and seeks declarations that the Selective Policy does not provide coverage for either SBS or Mr. Smiley for the Underlying Lawsuit, that it may withdraw from providing a defense for either SBS or Mr. Smiley in the Underlying Lawsuit, and that SBS and Mr. Smiley must reimburse Selective for fees and costs Selective has paid for their defense in the Underlying Lawsuit. [Filing No. 10.]

On February 18, 2016, Cincinnati moved to intervene in this lawsuit, [Filing No. 22], the Court granted the motion, [Filing No. 24], and Cincinnati filed a Complaint for Declaratory Judgment on February 26, 2016, [Filing No. 29]. Cincinnati notes several exclusions in the Cincinnati Auto Policy and the Cincinnati Umbrella Policy, and requests: (1) a declaration that the Cincinnati Auto Policy does not provide coverage for Mr. Smiley and/or SBS for claims being asserted by Mr. Callahan in the Underlying Lawsuit; (2) a declaration stating whether the Cincinnati Umbrella Policy provides coverage to Mr. Smiley and/or SBS for claims asserted by Mr. Callahan in the Underlying Lawsuit; and (3) a declaration stating whether the Cincinnati Umbrella Policy is an excess policy such that any duty of Cincinnati to defend or indemnify Mr. Smiley and/or SBS for claims asserted by Mr. Callahan in the Underlying Lawsuit is triggered only after coverage under the Selective Policy has been exhausted. [Filing No. 29 at 19.]

All parties filed summary judgment motions on December 2, 2016, and the motions are now fully briefed and ripe for the Court's decision. [Filing No. 88; Filing No. 90; Filing No. 93.] The Court notes at the outset that Selective, SBS, and Mr. Smiley have not complied with the Court's Practices and Procedures, which specifically state that:

> If a party plans to file a motion for summary judgment, counsel for that party shall contact counsel for the other parties to the action to determine if any other party also plans to file a motion for summary judgment. In the event that more than one party plans to file a motion for summary judgment, Judge Magnus-Stinson prefers to avoid simultaneous briefs on "mirror image" motions. Rather than the normal brief, response, and reply for each motion, she prefers four briefs as follows on cross motions for summary judgment:
>
> 1. Motion and Brief in Support by Party A (limited to 35 pages);
>
> 2. Cross-Motion, Brief in Support and Response in Opposition by Party B (limited to 55 pages);
>
> 3. Reply in Support of Motion and Response in Opposition to Cross-Motion by Party A (limited to 40 pages);
>
> 4. Reply in Support of Cross-Motion by Party B (limited to 20 pages).

[Filing No. 7 at 2-3.] Instead of following this procedure, Selective on the one hand and SBS and Mr. Smiley on the other filed Motions for Summary Judgment on the same day and, subsequently, responses and replies with each motion. The briefs are lengthy, and there is significant duplication of arguments. This has made the Court's review of the motions unnecessarily burdensome. The parties and counsel should ensure that they comply with the Court's Practices and Procedures going forward in this and other cases. In any event, the Court has done its best to parse through the briefs and match up arguments and responses.

### III.
### GENERALLY APPLICABLE INSURANCE LAW

When the Court exercises diversity jurisdiction over an action, it is "obliged to apply state law to the substantive issues in the case." *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635,

639 (7th Cir. 2015) (citing *Erie RR. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).  The parties do not dispute that Indiana law governs this action.  Accordingly, this Court must "apply the law that would be applied by the Indiana Supreme Court."  *Lodholtz*, 778 F.3d at 639.  "If the Indiana Supreme Court has not spoken on the issue, [the Court] generally treat[s] decisions by the state's intermediate appellate courts as authoritative, unless there is a compelling reason to think that the state supreme court would decide the issue differently."  *Id.*

The Indiana Supreme Court has summarized the well-established standards for interpreting insurance policies in Indiana as follows:

> Interpretation of an insurance policy presents a question of law that is particularly suitable for summary judgment.  It is well settled that where there is ambiguity, insurance policies are to be construed strictly against the insurer and the policy language is viewed from the standpoint of the insured.  This is especially true where the language in question purports to exclude coverage.  Insurers are free to limit the coverage of their policies, but such limitations must be clearly expressed to be enforceable.  Where provisions limiting coverage are not clearly and plainly expressed, the policy will be construed most favorably to the insured, to further the policy's basic purpose of indemnity.  Where ambiguity exists not because of extrinsic facts but by reason of the language used, the ambiguous terms will be construed in favor of the insured for purposes of summary judgment.

*State Auto. Mut. Ins. Co. v. Flexdar, Inc.*, 964 N.E.2d 845, 848 (Ind. 2012) (citations and quotations omitted).

The Court will "construe the insurance policy as a whole and consider all of the provisions of the contract and not just the individual words, phrases, or paragraphs."  *West Bend Mut. Ins. Co. v. U.S. Fid. & Guar. Co.*, 598 F.3d 918, 921 (7th Cir. 2010) (applying Indiana law).  Words are given their ordinary meaning, though where ambiguity exists the policy is read "strictly against the insurer."  *Id.*  Ambiguous language in the policy is resolved in favor of the insured as long as such an interpretation harmonizes the provisions of the contract as a whole.  *Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 578 (Ind. 2013).  Failure to define a term in

the policy "does not necessarily make that term ambiguous, nor does a simple disagreement about the term's meaning." *Id.* (citation omitted). "Rather, an ambiguity exists where the provision is susceptible to more than reasonable interpretation." *Id.* (citation and quotation omitted). Where the terms of an insurance policy are clear and unambiguous, the Court "will apply the plain and ordinary meaning of the terms and enforce the contract according to its terms….[T]he parties' intent is to be determined by reviewing the language contained within the 'four corners' of the contract, and 'parol or extrinsic evidence is inadmissible to expand, vary, or explain the instrument unless there has been a showing of fraud, mistake, ambiguity, illegality, duress or undue influence.' Extrinsic evidence cannot be used to create an ambiguity." *Bar Plan Mut. Ins. Co. v. Likes Law Office, LLC*, 44 N.E.3d 1279, 1285 (Ind. Ct. App. 2015) (citations omitted).

## IV.
### COVERAGE UNDER THE SELECTIVE POLICY

The Court notes at the outset that if the Selective Policy provides coverage for the Underlying Lawsuit, then Selective and Cincinnati agree that the Cincinnati Auto Policy and the Cincinnati Umbrella Policy only potentially provide coverage after coverage under the Selective Policy has been exhausted. [*See* Filing No. 94 at 26-27 (Cincinnati arguing that the Cincinnati Auto Policy and the Cincinnati Umbrella Policy only potentially apply after the Selective Policy's limits have been exhausted); Filing No. 101 at 4-5 (Selective conceding that "[i]n the event that this Court determines that coverage may be afforded for the Underlying Lawsuit under both the Cincinnati Policies and the Selective Policy…the Selective Policy would be deemed to take priority under Indiana law").] Accordingly, the Court will address Selective's Motion for

Summary Judgment and Mr. Smiley's and SBS's Motion for Summary Judgment before considering Cincinnati's motion.[2]

### A. Coverage for SBS

SBS and Mr. Smiley argue that because SBS obtained summary judgment in the Underlying Lawsuit and is no longer seeking coverage under the Selective Policy for the Underlying Lawsuit, there is no actual case or controversy between the two parties. [Filing No. 103 at 7-8.] Selective points out that it is seeking reimbursement of fees and costs it has already paid to defend SBS in the Underlying Lawsuit, and also that an Indiana statute requires that SBS be named as a party in the litigation because it is the named insured. [Filing No. 121 at 14.]

Because SBS obtained summary judgment in its favor in the Underlying Lawsuit, it is not seeking any amount under the Selective Policy for a judgment nor is it seeking defense costs going forward. Selective argues that it is entitled to recoup the costs it has incurred in defending SBS up to the point that it obtained summary judgment, but has not pointed to any legal precedent authorizing it to do so. While there do not appear to be any reported cases applying Indiana law to this issue, other courts have founds that an insurer does not have a right to recoup fees it pays under a duty to defend after resolution of the underlying litigation absent a policy provision allowing it to do so. *See, e.g.*, *CAMICO Mut. Ins. Co. v. Heffler, Radetich & Saitta, L.L.P.*, 587 Fed. Appx. 726, 729 (3d Cir. 2014) ("In Pennsylvania, insurers normally may not recoup costs expended in defense of an insured party," but "reimbursement is possible when a contract expressly provides for it"); *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1175-76 (10th Cir. 2010) (insurer cannot recoup defense costs paid on behalf of insured absent policy

---

[2] Although Mr. Callahan has joined in SBS's and Mr. Smiley's response to Selective's Motion for Summary Judgment, [Filing No. 105], the Court will refer to the responding parties as SBS and Mr. Smiley. Mr. Callahan did not join in SBS's and Mr. Smiley's Motion for Summary Judgment.

provision allowing it to do so, and "a reservation of rights letter does not create a contract allowing an insurer to recoup defense costs from its insureds") (citations and quotations omitted); *General Agents Ins. Co. of America, Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1102-03 (Ill. 2005) ("if an insurer wishes to retain its right to seek reimbursement of defense costs in the event it later is determined that the underlying claim is not covered by the policy, the insurer is free to include such a term in its insurance contract. Absent such a provision in the policy, however, an insurer cannot later attempt to amend the policy by including the right to reimbursement in its reservation of rights letter"). Additionally, the Draft of Section 21 of the Restatement of the Law of Liability Insurance provides that "[u]nless otherwise stated in the insurance policy or otherwise agreed to by the insured, an insurer may not seek recoupment of defense costs from the insured, even when it is subsequently determined that the insurer did not have a duty to defend or pay defense costs." Restatement of the Law of Liability Insurance § 21 (Discussion Draft, to be considered by the members of the American Law Institute).

In any event, it appears beyond dispute that Selective had a duty to defend SBS in the Underlying Lawsuit. In analyzing whether Selective had a duty to defend, it is particularly significant that the state court found that Mr. Callahan was not an SBS employee. It is well-settled in Indiana that "an insurer's duty to defend is determined by the allegations of the complaint coupled with those facts known to or ascertainable by the insurer after a reasonable investigation." *Newnam Mfg., Inc. v. Transcontinental Ins. Co.*, 871 N.E.2d 396, 405 (Ind. Ct. App. 2007) (citations omitted). Here, there is even more to consider: In the very case for which Selective defended Mr. Callahan, the court found that he was not an employee of SBS. And, ironically, this is the result Selective desired in the Underlying Lawsuit, because it meant that SBS obtained summary judgment in its favor and was dismissed from the lawsuit. Selective's vague claim that

it seeks recoupment of attorneys' fees and costs paid on behalf of SBS in the Underlying Lawsuit, without pointing to any provisions in the Selective Policy that would support recoupment, is not enough to create a case or controversy between Selective and SBS now that SBS no longer is a party to the Underlying Lawsuit.

Accordingly, the Court **DENIES IN PART AS MOOT** Selective's Motion for Summary Judgment, [Filing No. 88], to the extent that it seeks a declaration that there is no coverage under the Selective Policy for SBS in connection with the Underlying Lawsuit, and **DENIES IN PART** the motion to the extent that it seeks reimbursement of defense costs paid to date on behalf of SBS for the Underling Lawsuit. Further, the Court **GRANTS IN PART** SBS's and Mr. Smiley's Motion for Summary Judgment, [Filing No. 90], which the Court treats as a motion to dismiss as to whether there is a case or controversy between Selective and SBS, to the extent that it dismisses Selective's request for declaratory relief against SBS with prejudice and terminates SBS as a party to the lawsuit.[3]

### B. Coverage for Mr. Smiley

Selective argues that Mr. Callahan was an SBS employee under a ten-factor test set forth in the Restatement (Second) of Agency and that, therefore, several exclusions in the Selective

---

[3] The Court rejects Selective's argument that Indiana Code § 34-14-1-11 requires that SBS remain a party to the lawsuit since it is named insured on the Selective Policy. [Filing No. 109 at 9.] Section 34-14-1-11 provides that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest that would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." Selective does not explain what SBS's continued interest in this litigation would be, given that it is no longer a party to the Underlying Lawsuit, and the Court has found that Selective may not recoup the attorneys' fees and costs it has paid on SBS's behalf in connection with the Underlying Lawsuit.

Policy preclude coverage for claims asserted by Mr. Callahan against Mr. Smiley in the Underlying

Lawsuit, including:[4]

- Employee Indemnification and Employer's Liability Exclusions in the Business Auto Coverage and Umbrella Liability Coverage Parts, which preclude coverage for bodily injury to an employee of the insured arising out of and in the course of employment, or performing the duties related to the conduct of the insured's business, [Filing No. 88-2 at 33-34; Filing No. 88-2 at 55];

- Workers' Compensation Exclusions in the Business Auto Coverage and Umbrella Liability Coverage Parts, which preclude coverage for any obligation of the insured under workers' compensation laws, [Filing No. 88-2 at 33; Filing No. 88-2 at 56];

- Fellow Employee Exclusions in the Business Auto Coverage and Umbrella Liability Coverage Parts, which preclude coverage for "'Bodily injury' to any fellow 'employee' of the 'insured' arising out of and in the course of the fellow 'employee's' employment or while performing duties related to the conduct of your business…" and provide that "[n]o person is an insured as respects 'Bodily Injury' to a fellow 'employee' unless such insurance is provided the insured by 'underlying insurance,'" respectively, [Filing No. 88-2 at 34; Filing No. 88-2 at 61];

- Concealment, Misrepresentation or Fraud Provisions in the Business Auto Coverage and Umbrella Liability Coverage Parts, which exclude coverage where the insured has intentionally concealed or misrepresented a material fact or committed fraud. [Filing No. 88-2 at 38; Filing No. 88-2 at 64].

---

[4] Selective also argues that an Auto Exclusion in the Commercial General Liability Coverage Part of the Selective Policy precludes coverage for "'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any…'auto'…owned or operated by…any insured." [Filing No. 88-2 at 10.] SBS and Mr. Smiley clarified in their response in opposition to Selective's Motion for Summary Judgment that they "are not requesting coverage for the Underlying Lawsuit under the 'Commercial General Liability Coverage' part" of the Selective Policy. [Filing No. 103 at 2.] Accordingly, the Court need not consider whether the Auto Exclusion applies, nor whether the Commercial General Liability Coverage Part provides coverage for the Underlying Lawsuit. Selective's Motion for Summary Judgment is **DENIED AS MOOT** to the extent it relates to coverage under the Commercial General Liability Coverage Part. The Court's discussion of the Selective Policy will focus only on the Business Auto Coverage and Umbrella Liability Coverage Parts of the Selective Policy.

In response, Mr. Smiley argues that none of the exclusions or provisions relied upon by Selective precludes coverage. Mr. Smiley argues that the Employee Indemnification Exclusions, the Employer's Liability Exclusions, the Workers' Compensation Exclusions, and the Fellow Employee Exclusions (collectively, the "Employment-Related Exclusions") do not apply because they only apply to claims against the named insured, SBS (not Mr. Smiley), Mr. Callahan was not an SBS employee, and Mr. Callahan's injuries did not occur in the course of his employment. [Filing No. 103 at 9-10.] He contends that Indiana law dictates that where an individual is a casual and occasional worker – as he argues Mr. Callahan was here – then the term "employee" must be construed in favor of the insured. [Filing No. 103 at 14-15.] Mr. Smiley also argues that even if the ten-factor test is used to determine whether Mr. Callahan was an employee of SBS, application of the test indicates that Mr. Callahan was not an employee. [Filing No. 103 at 18-27.] He asserts that Mr. Callahan was either a "temporary worker" or a "volunteer worker" under the terms of the Selective Policy, so the Employment-Related Exclusions do not apply. [Filing No. 103 at 27-28.] Mr. Smiley argues further that even if Mr. Callahan were considered an employee, Selective would still have to show that his injuries occurred in the course of employment and that the evidence indicates this was not the case. [Filing No. 103 at 28-33.] Finally, Mr. Smiley argues that Selective has not identified any misrepresentations by Mr. Smiley, nor have there been any. [Filing No. 103 at 33-35.]

On reply, Selective argues again that the Restatement's ten-factor test applies to the issue of whether Mr. Callahan was an employee, and that application of the test leads to the conclusion that he was. [Filing No. 121 at 3-8.] Selective reiterates its arguments relating to the Employment-Related Exclusions in the Selective Policy. [Filing No. 121 at 8-14.]

*1.    The Employment-Related Exclusions*

a.    <u>Employee Indemnification and Employer's Liability Exclusions</u>

The Employee Indemnification and Employer's Liability Exclusions in the Business Auto Coverage Part and the Employer's Liability Exclusion in the Umbrella Liability Coverage Part all require that Mr. Callahan be an employee of the "insured."  Significantly, the Business Auto Coverage Part specifically states that "[e]xcept with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or 'suit' is brought."  [Filing No. 88-2 at 41.][5]  Accordingly, Mr. Callahan would need to be an employee of Mr. Smiley in order for the Employee Indemnification and Employer's Liability Exclusions to apply.  *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. American Motorists Ins. Co.*, 707 F.3d 797, 802 (7th Cir. 2013) (where policy provided that it applied "separately to each insured against whom claim is made or 'suit' is brought," a professional services exclusion did not preclude coverage for insureds who did not render professional services); *St. Katherine Ins. Co. Ltd. v. Insurance Co. of North America, Inc.*, 11 F.3d 707, 710 (7th Cir. 1993) ("The purpose of severability clauses is to treat each entity covered under the policy as if each were insured separately….").

Selective has not set forth facts to support the notion that Mr. Callahan was an employee of Mr. Smiley, only that he was an employee of SBS.[6]  Because Mr. Callahan must be an employee

---

[5] Although not pointed out by Mr. Smiley, the Umbrella Liability Coverage Part of the Selective Policy contains a similar provision which states "Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies as if each Named Insured were the only Named Insured, and separately to each insured against whom claim is made or 'suit' is brought."  [Filing No. 88-2 at 65.]

[6] Selective did not argue in its own Motion for Summary Judgment that Mr. Callahan was an employee of Mr. Smiley, and only briefly set forth that argument in response to SBS's and Mr. Smiley's Motion for Summary Judgment.  [*See* Filing No. 109 at 15-16 (stating "in the event that

of Mr. Smiley for the Employee Indemnification and Employer's Liability Exclusions to apply, those exclusions do not preclude coverage here.

### b. Workers' Compensation Exclusions

As to the Workers' Compensation Exclusions in the Business Auto Coverage Part and the Umbrella Liability Coverage Part, they apply to any obligation "for which the 'insured' or the 'insured's' insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law" or any "obligation of the insured under a workers compensation, unemployment compensation or disability benefits law, or under any similar law," respectively. [Filing No. 88-2 at 33; Filing No. 88-2 at 56.] Because any obligation belonged to SBS and SBS's insurer under the law – and not to Mr. Smiley – the Workers' Compensation Exclusions do not preclude coverage for Mr. Smiley.

### c. Fellow Employee Exclusions

The Fellow Employee Exclusion in the Business Auto Coverage Part of the Selective Policy precludes coverage for "'Bodily injury' to any fellow 'employee' of the 'insured' arising out of and in the course of the fellow 'employee's' employment or while performing duties related to the conduct of your business." [Filing No. 88-2 at 34.] The Umbrella Liability Coverage Part excludes fellow employee liability by providing that "[n]o person is an insured as respects 'Bodily

---

this Court does not agree that Callahan was an employee of SBS, or finds that…a question of fact exists as to Callahan's employee status, then this Court should find that Callahan was an employee of Smiley, or at a minimum that a question of fact exists as to whether…Callahan was in fact an employee of Smiley, such that the workers compensation exclusion still would apply to preclude coverage for Smiley").] Selective does not set forth any record evidence to support its position, however, and the Court rejects the notion that Mr. Callahan was an employee of Mr. Smiley. It is also contrary to Selective's assertion all along that Mr. Callahan was an employee of SBS. [*See, e.g.*, Filing No. 85 at 2 (Selective setting forth in its Statement of Claims that "[t]he evidence in the case establishes that Smiley and Callahan were employees of SBS and acting within the course and scope of SBS's business at the time of the accident").]

Injury' to a fellow 'employee' unless such insurance is provided the insured by 'underlying insurance.'" [7]  [Filing No. 88-2 at 61.]

Mr. Smiley argues that the Fellow Employee Exclusions only apply "when an insured is sued by its own employee," and that the "insured" in the exclusion refers to Mr. Smiley, who was not Mr. Callahan's employer.  [Filing No. 92 at 12 (emphasis omitted).]  Mr. Smiley cites only to cases from other jurisdictions to support his interpretation of the Fellow Employee Exclusion, and those cases either do not support his proposition or are distinguishable.  For example, Mr. Smiley cites *Barnette v. Hartford Ins. Group*, 653 P.2d 1375, 1383 (Wy. 1982) for the proposition that "fellow employee exclusion applies only when an insured is sued by its own employee."  [Filing No. 92 at 12.]  The court in *Barnette* actually found that a fellow employee exclusion prevented an employee from suing its employer when he or she was injured by a fellow employee.  It did not hold that it did not apply when an employee sues a fellow employee, and indeed stated the opposite: "If, on the other hand, the insured in question is not an employer who seeks policy protection from the claims of employees, then the cross-employee exclusionary rule cannot interfere with the coverage of that insured – and why should it?  Such an insured has no employer-employee relationship with which to be concerned.  He is not one who is obligated to protect employees through either compensation contribution or private insurance.  He is just an additional insured….  [Plaintiff] is not an employer seeking protection from claims arising out of an injury to his employee and is therefore not precluded by the cross-employee exclusionary clause from coverage by the…policy."  Additionally, the policy language in *Gulmire v. St. Paul Fire and Marine Ins.*

_____

[7] This provision of the Umbrella Liability Coverage Part appears in a section titled "Who Is An Insured" and is not technically a policy exclusion.  For ease of reference, however, the Court refers to the Fellow Employee Exclusion in the Business Auto Coverage Part and the Fellow Employee Provision in the Umbrella Liability Coverage Part as "the Fellow Employee Exclusions."

*Co.*, 674 N.W.2d 529, 638 (Wis. Ct. App. 2003), was significantly different than the language at issue here. The Fellow Employee Exclusion in that case required that the injury arise out of "the fellow employee's employment by you." *Id.* (emphasis added). The Selective Policy does not contain the "by you" language.

The Court also notes that Mr. Smiley's reading of the Fellow Employee Exclusions disregards the word "fellow." SBS is an employer, and would not have any "fellow employees." Instead, the Fellow Employee Exclusions preclude coverage when one employee of SBS sues another employee of SBS. So if Mr. Callahan were considered to be an employee of SBS, he would be a "fellow employee" of Mr. Smiley and the Fellow Employee Exclusions would apply. That is a big "if," though. The parties intensely dispute whether Mr. Callahan was an employee of SBS, even disagreeing on what test should be applied to make that determination. Selective argues that a ten-factor test applies under Indiana law, which considers the extent of control the employer had over the individual's work, the occupation or business of the one employed, the kind of occupation at issue, the skill required to complete the assigned tasks, whether the principal provided the instrumentalities of employment, the length of employment, the method of payment, the regular business of the employer, the belief of the parties, and whether the principal is in business. [Filing No. 89 at 19-25 (applying the ten factors set forth in Restatement (Second) of Agency § 220).] It asserts that consideration of these factors leads to the conclusion that Mr. Callahan was an SBS employee. Mr. Smiley contends that the ten-factor test only applies when a court is trying to decide whether an individual is an independent contractor versus an employee and that, instead, the Court should determine whether Mr. Callahan was a "casual and occasional worker" and, if so, should conclude that he was not an SBS employee. [Filing No. 103 at 14-18.]

Mr. Smiley also argues that even if the ten-factor test applies, it leads to the conclusion that Mr. Callahan was not an SBS employee. [Filing No. 103 at 18-27.]

The Court finds that the Restatement's ten-factor test, also set forth by the Indiana Supreme Court in *Moberly v. Day*, 757 N.E.2d 1007, 1010 (Ind. 2001), and most recently applied by the Indiana Court of Appeals in *Vinup v. Joe's Const., LLC*, 64 N.E.3d 885, 890-93 (Ind. Ct. App. 2016), applies here to whether Mr. Callahan was an employee of SBS. The Court does not find significant the fact that the ten-factor test has been applied in situations where the issue was whether the individual was an independent contractor or an employee, and does not find any meaningful distinction between that situation and the situation here. The determination of whether an individual is an employee is "a question for the trier of fact" unless "the significant underlying facts are undisputed" – in which case the Court "may properly determine a worker's classification as a matter of law." *Vinup*, 64 N.E.3d at 890. Determination of whether Mr. Callahan was an SBS employee, acting within the course of his employment when the accident occurred, is replete with disputed facts.[8] The following table illustrates just a few of the facts, which would be considered in applying the ten-factor test, that the parties dispute:[9]

---

[8] Mr. Smiley argues in response to Selective's Motion for Summary Judgment that Selective is collaterally estopped from arguing that Mr. Smiley was an SBS employee because the state court in the Underlying Lawsuit found that he was not. Under Indiana law, however, "[a]n insurer may avoid the effects of collateral estoppel [from litigation in which the insured is involved] by: (1) defending the insured under a reservation of rights in the underlying tort action; or (2) filing a declaratory judgment action for a judicial determination of its obligations under the policy." *Carpenter v. Lovell's Lounge & Grill, LLC*, 59 N.E.3d 330, 336 (Ind. Ct. App. 2016) (quoting *Liberty Mut. Ins. Co. v. Metzler*, 586 N.E.2d 897, 900 (Ind. Ct. App. 1992)). Selective has done both of these things, so is not collaterally estopped from arguing that Mr. Callahan was an SBS employee for purposes of coverage under the Selective Policy.

[9] Even if the Court were to apply the "casual and occasional" worker test set forth by Mr. Smiley, many of the same factual issues would still exist which would preclude summary judgment.

| Selective's Proposed Fact | Mr. Smiley's Proposed Fact |
|---|---|
| Mr. Callahan "did not have any employment at all outside of working for SBS, Smiley or other Smiley owned entities from 2007 through the date of the accident." [Filing No. 89 at 20 (citing Filing No. 88-9 at 15).] | Mr. Callahan "worked full-time for [SBS] from 2010 to 2012, but quit working for [SBS] in or around 2012 and began working for other companies, including a truck driving company." [Filing No. 103 at 22 (citing Filing No. 88-9 at 14-17).] |
| "SBS paid Callahan $10 an hour for work performed." [Filing No. 89 at 22 (citing Filing No. 88-10 at 11).] | "[B]oth Callahan and Smiley explained that it was not unusual for Callahan to 'work' for [SBS] without receiving any compensation. When Callahan was paid, which did not always occur, it was often a lump-sum payment in an amount determined arbitrarily by Smiley or through means other than money, like lunch." [Filing No. 103 at 23 (citing Filing No. 104-4 at 5; Filing No. 104-4 at 8).] |
| SBS believed Mr. Callahan was an employee because "knowing that workers compensation benefits were only payable to employees, [it] filed a workers compensation claim," and "represented to its workers compensation carrier that Callahan was an employee and was working when he was injured." [Filing No. 89 at 23 (citing Filing No. 88-3 at 70; Filing No. 88-3 at 74; Filing No. 88-6 at 8-9).] | There is "overwhelming evidence in the record demonstrating that neither Callahan nor Smiley ([SBS's] owner) considered Callahan to be an employee of [SBS] at the time of the Accident." [Filing No. 103 at 24 (citing Filing No. 104-1 at 4-5; Filing No. 104-2 at 15; Filing No. 108-4 at 5).] |

Further, even if Mr. Callahan were considered an employee of SBS, additional factual disputes exist regarding whether he was acting within the course of his employment on the day of the accident. This must be the case for the Fellow Employee Exclusions to apply. [*See, e.g.*, Filing No. 88-2 at 34 (Fellow Employee Exclusion in Business Auto Coverage Part precludes coverage for "'Bodily injury' to any fellow 'employee' of the 'insured' arising out of and in the course of the fellow 'employee's' employment or while performing duties related to the conduct of your business").] For example, Selective asserts that "Smiley and Callahan were engaged in SBS business [on the day of the accident] as a continuation of the business transaction started when they purchased the parts the previous month." [Filing No. 89 at 24; *see also* Filing No. 121 at 8

(citing Filing No. 88-3 at 64 (RV parts paid for with SBS credit card and Mr. Smiley provided SBS's tax identification number in connection with the purchase)).] But Mr. Smiley argues that "[b]oth Callahan and Smiley have repeatedly testified that they were not performing [SBS] business on the date of the Accident. They viewed the trip as an 'adventure,' rather than a business trip. They intended to eat lunch at a novelty restaurant on their way and intended to use the parts for a variety of personal projects, including a houseboat, a golf cart, or trailer. These projects were unrelated to [SBS's] business." [Filing No. 103 at 29 (citing Filing No. 104-1 at 8; Filing No. 104-2 at 16; Filing No. 104-3 at 29).] These are yet additional genuine issues of fact which preclude summary judgment regarding the application of the Fellow Employee Exclusions.[10]

In sum, the Court finds that the Employee Indemnification Exclusion, the Employer's Liability Exclusions, and the Workers' Compensation Exclusions in the Business Auto Coverage and Umbrella Liability Coverage Parts do not preclude coverage for Mr. Smiley under the Selective Policy because Mr. Smiley was not Mr. Callahan's employer. The Court also finds that there are key factual disputes related to the application of the Fellow Employee Exclusions in the Business Auto Coverage and Umbrella Liability Coverage Parts to claims against Mr. Smiley asserted in the Underlying Lawsuit because application of those exclusions turns on whether Mr.

---

[10] Mr. Smiley also argues that Mr. Callahan was a "temporary worker" or a "voluntary worker" under the terms of the Selective Policy, so is not considered an SBS employee. The facts surrounding whether Mr. Smiley was a "temporary worker" or a "voluntary worker" are also disputed, including how often Mr. Callahan worked for SBS and whether Mr. Callahan was always paid for his work. [*See* Filing No. 103 at 27-28 (Mr. Smiley citing evidence to support his position); Filing No. 121 at 12-14 (Selective arguing that Mr. Callahan was not a "temporary worker" or a "volunteer worker" and citing to evidence that he was not furnished to SBS, that he was regularly paid for his work, and that he expected to be paid for his work on the day of the accident).] Accordingly, the Court cannot decide as a matter of law that those provisions include or do not include Mr. Callahan.

Callahan was an employee of SBS and was acting within the scope or course of his employment on the day of the accident.

The Court notes Selective's statement in its opening brief that "[t]he facts that emerged immediately after the accident are the most compelling…." [Filing No. 89 at 23.] This is precisely what the Court cannot do on summary judgment – pick one version of the events over another. While the Court must view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor, *Darst*, 512 F.3d at 907, it may not choose to accept one party's side of the story over the other party's side when key facts are genuinely disputed. This is the situation here. Accordingly, the Court **GRANTS IN PART** Mr. Smiley's Motion for Summary Judgment and **DENIES IN PART** Selective's Motion for Summary Judgment as they relate to application of the Employee Indemnification Exclusion, the Employer's Liability Exclusions, and the Workers' Compensation Exclusions; and **DENIES IN PART** Selective's Motion for Summary Judgment and Mr. Smiley's Motion for Summary Judgment as they relate to application of the Fellow Employee Exclusions.

### 2. *The Concealment, Misrepresentation, and Fraud Provisions*

Selective argues that the Selective Policy does not provide coverage for Mr. Smiley because both the Business Auto Coverage and Umbrella Liability Coverage Parts preclude coverage where the insured conceals or misrepresents facts, or engages in fraud. [Filing No. 89 at 32-34.] Selective contends that "[t]he concealment, misrepresentations and/or fraud by Smiley/SBS related directly to Callahan's status as an employee and the purpose of the trip to RV Salvage at the time of the accident," that "[t]he attempts by Smiley and Callahan to try and change the facts to pursue a third-party claim and insurance coverage, instead of pursuing the workers

[compensation] claim, cannot be countenanced," and that "Smiley even went so far as to advise Callahan to sue him – because he had insurance coverage." [Filing No. 89 at 34.]

In response, Mr. Smiley argues that Selective does not specifically identify any misrepresentations and that the facts show that Mr. Callahan was not an employee of SBS. [Filing No. 103 at 33-34.] He also asserts that Selective has not shown that any misrepresentation was material, or that Selective would have handled the claim differently but for the alleged misrepresentation. [Filing No. 103 at 34.]

The alleged misrepresentations that Selective relies upon relate to whether Mr. Callahan was an SBS employee on the day of the accident, and whether he was acting within the scope of his employment. The Court finds that Selective has not provided any evidence that SBS and Mr. Callahan intentionally misrepresented facts, but only that their version of facts differs from Selective's. It is noteworthy that the state court's finding in the Underlying Lawsuit that Mr. Callahan was not an SBS employee on the day of the accident is consistent with SBS's and Mr. Smiley's position. While genuine issues of fact exist regarding whether Mr. Callahan was SBS's employee, the fact that these issues exist is distinct from a finding that SBS and Mr. Smiley misrepresented facts. Accordingly, the Court **DENIES IN PART** Selective's Motion for Summary Judgment as it relates to application of the concealment, misrepresentation, or fraud provisions in the Selective Policy, and **GRANTS IN PART** SBS's and Mr. Smiley's Motion for Summary Judgment on the same issue.[11]

_____

[11] SBS and Mr. Smiley also seek summary judgment that the Cooperation Clause in the Selective Policy does not preclude coverage. Selective provides a cursory argument in response to SBS's and Mr. Smiley's Motion for Summary Judgment regarding the Cooperation Clause, without even citing to the language of the Clause. [Filing No. 109 at 19.] Selective has not provided any evidence that Mr. Smiley failed to cooperate or provided false information – only that his statements were inconsistent and contradicted Selective's position. The Court **GRANTS IN PART** SBS's and Mr. Smiley's Motion for Summary Judgment to the extent that it finds that the

To re-cap the Court's findings as they relate to coverage under the Selective Policy, the Court **GRANTS IN PART** SBS's and Mr. Smiley's Motion for Summary Judgment, which the Court treats as a motion to dismiss on this issue, to the extent that it finds that there is no longer a case or controversy between Selective and SBS, that all claims against SBS are dismissed, and that SBS is terminated as a party to the lawsuit. The Court **DENIES IN PART AS MOOT** Selective's Motion for Summary Judgment to the extent Selective seeks a declaration that there is no coverage under the Selective Policy for SBS in connection with the Underlying Lawsuit and **DENIES IN PART** the motion to the extent it seeks reimbursement of defense costs paid to date on behalf of SBS for the Underlying Lawsuit. The Court **DENIES IN PART** Selective's Motion for Summary Judgment and **GRANTS IN PART** Mr. Smiley's Motion for Summary Judgment, to the extent it finds that the Employee Indemnification, Employer's Liability, and Workers' Compensation Exclusions, the Concealment, Misrepresentation, and Fraud Provisions, and the Cooperation Clause do not preclude coverage for Mr. Smiley under the Selective Policy. Finally, the Court **DENIES IN PART** both Selective's Motion for Summary Judgment and SBS's and Mr. Smiley's Motion for Summary Judgment to the extent that it finds that genuine issues of material fact exist regarding whether the Fellow Employee Exclusions preclude coverage for Mr. Smiley.

## V.
### COVERAGE UNDER THE CINCINNATI POLICIES

Cincinnati seeks summary judgment based on several exclusions in the Cincinnati Auto Policy and the Cincinnati Umbrella Policy. The Court considers each policy in turn.

---

Cooperation Clause and the "misrepresentation or false swearing" provisions in the Selective Policy do not preclude coverage for the Underlying Lawsuit.

**A. The Cincinnati Auto Policy**

Cincinnati argues that three exclusions in the Cincinnati Auto Policy preclude coverage for Mr. Smiley[12]: (1) Exclusion (A)(4), which precludes coverage for "any 'covered person'…[f]or 'bodily injury' to an employee of that 'covered person' during the course of employment"; (2) Exclusion (A)(6), which precludes coverage for "any 'covered person'…[w]hile employed or otherwise engaged in the 'business' of: a. Selling; b. Repairing; c. Servicing; d. Storing; or e. Parking; vehicles designated for use mainly on public highways….This Exclusion…does not apply to the ownership, maintenance or use of 'your covered auto' by…'You.'"; and (3) Exclusion (B)(2)(b), which precludes coverage for "the ownership, maintenance or use of:…[a]ny vehicle, other than 'your covered auto', which is: Furnished or available for 'your' regular use." [Filing No. 93-3 at 11-12.]

The Court discusses Exclusion (B)(2)(b) first, because it is dispositive on the issue of whether the Cincinnati Auto Policy provides coverage for claims against Mr. Smiley in the Underlying Lawsuit. Cincinnati argues that Exclusion (B)(2)(b) applies because it is undisputed that Mr. Smiley was driving a pickup truck owned by SBS on the day of the accident, that Mr. Smiley routinely used the pickup truck for both personal and business reasons, and that the pickup truck is not a "covered auto" under the Cincinnati Auto Policy. [Filing No. 94 at 17.] It cites to

---

[12] Although Cincinnati requests a judgment that it has no duty to defend or indemnify SBS in the Underlying Lawsuit, the Court **DENIES AS MOOT** the portion of its Motion for Summary Judgment that relates to coverage for SBS. As discussed above, SBS obtained summary judgment in the Underlying Lawsuit and so will not face liability in that lawsuit. As for SBS's defense in that lawsuit, the Court has already concluded that Selective may not recoup attorneys' fees and costs it paid on SBS's behalf in the Underlying Lawsuit, and Selective has conceded that "the Selective Policy would be deemed to take priority [over the Cincinnati Policies] under Indiana law." [Filing No. 101 at 5.] Accordingly, Cincinnati will not face liability in connection with Mr. Callahan's claims against SBS in the Underlying Lawsuit, and the Court's discussion is limited to potential coverage for Mr. Smiley.

excerpts from Mr. Smiley's deposition to support its arguments. Mr. Smiley's only response is that there is a genuine issue of fact regarding whether "an individual's personal use of a mixed-use vehicle is sufficient to connote 'regular' use," and that the Cincinnati Auto Policy indicates that Mr. Smiley also owned his own vehicle for personal use. [Filing No. 107 at 14-15.]

Mr. Smiley testified regarding the ownership of the 2006 Chevy Silverado pickup truck that he was driving on the day of accident, and his regular use of the truck, as follows:

Q: What truck were you driving?

A: I get confused by that, but I think it was a 2006 Chevrolet pickup. It was predominantly the truck I drove.

Q: And who owned that truck?

A: It was – it was probably owned by Smiley Body Shop best I recollect.

Q: That vehicle was available to you for both business and personal use?

            *            *            *

A: Yes.

Q: Who was the primary driver of that vehicle?

            *            *            *

A: Myself.

            *            *            *

Q: So if somebody else was driving it, it was always with your permission?

A: Yes.

Q: To your knowledge, was that truck always titled in the name of the business?

A: Yes.

[Filing No. 93-6 at 20-21.]

Mr. Smiley does not point to any record evidence which contradicts his testimony. Further, the Cincinnati Auto Policy indicates that the only "covered auto" is a 2012 Honda Odyssey. [Filing No. 93-3 at 3.] Based on Mr. Smiley's own deposition testimony and on the Declarations Page of the Cincinnati Auto Policy, the Court finds that it is undisputed that SBS owned the 2006 Chevy Silverado Mr. Smiley was driving on the day of the accident, that the 2006 Chevy Silverado was not a "covered auto" under the Cincinnati Auto Policy, and that the 2006 Chevy Silverado was "furnished or available for [Mr. Smiley's] regular use." Accordingly, the Court **GRANTS IN PART** Cincinnati's Motion for Summary Judgment to the extent that it finds that Exclusion (B)(2)(b) precludes coverage under the Cincinnati Auto Policy for claims by Mr. Callahan against Mr. Smiley in the Underlying Lawsuit.[13]

### B. The Cincinnati Umbrella Policy

Cincinnati relies upon one provision and four exclusions in the Cincinnati Umbrella Policy to support its argument that coverage is precluded under that policy. The Court will address each in turn.

#### 1. *Paragraph 12(b)(2)*

Paragraph 12(b)(2) excludes from the definition of "Insured" "Any person or organization while employed or engaged in the business of selling, servicing, repairing, maintaining, parking or storing of 'automobiles.'" [Filing No. 93-5 at 10.] Cincinnati argues that Paragraph 12(b)(2) "clearly removes [Mr.] Smiley…as [an] insured[ ] under the Personal Umbrella Policy with the effect that there is no coverage under that policy for Callahan's personal injury claim" because "the evidence establishes that, at the time of the accident, Smiley and Callahan were on a trip to

---

[13] Because Exclusion (B)(2)(b) precludes coverage, the Court need not consider the other exclusions in the Cincinnati Auto Policy which Cincinnati relies upon in its Motion for Summary Judgment.

Elkhart to pick up and transport RV parts, some of which would be used in making repairs on an RV owned by SBS." [Filing No. 94 at 20.] Mr. Smiley argues in response that he "was not engaged in any business, much less the business of 'servicing' or 'repairing' vehicles at the time of the Accident." [Filing No. 107 at 17.]

The Court finds that a genuine issue of material fact exists regarding whether Mr. Smiley was "engaged in the business of selling, servicing, repairing, maintaining, parking or storing" automobiles at the time of the accident, such that Paragraph 12(b)(2) would preclude coverage. On the one hand, Cincinnati points to evidence indicating that the purpose of the trip on the day of the accident was to pick up auto parts and bring them back to SBS, and that the parts had been paid for by SBS. [Filing No. 122 at 12 (citing Filing No. 93-6 at 12-13; Filing No. 93-6 at 21).] On the other hand, Mr. Smiley cites evidence indicating that the trip to the RV store was an "adventure," "it was a casual day," and the parts they were picking up were not parts for the business but were to be used on a houseboat that Mr. Callahan and Mr. Smiley had designed. [*See* Filing No. 107 at 14 (citing Filing No. 108-1 at 8; Filing No. 108-2 at 16-17; Filing No. 108-3 at 29).] Based on these disputed facts, the Court cannot find as a matter of law that Paragraph 12(b)(2) precludes coverage for Mr. Smiley and **DENIES IN PART** Cincinnati's Motion for Summary Judgment based on that provision.

### 2. *Exclusion (B)(5)*

Exclusion (B)(5) precludes coverage for "'Bodily injury', 'personal injury' or 'property damage' arising out of a 'business' or 'business property', unless such liability is covered by valid and collectible 'underlying insurance' as listed in Schedule A…." [Filing No. 93-5 at 13.] As discussed above, there are genuine issues of material fact regarding whether the trip on the day of

the accident was business related or not. Accordingly, the Court **DENIES IN PART** Cincinnati's

Motion for Summary Judgment based on Exclusion (B)(5).

### 3. *Exclusion (B)(14)*

Exclusion (B)(14) precludes coverage for "'Bodily injury', personal injury' or 'property

damage' to: a. A fellow employee of an 'insured' occurring in the course of employment…."

[Filing No. 93-5 at 16.] Cincinnati relies upon much of the same evidence that Selective relied

upon in arguing that Mr. Callahan and Mr. Smiley were "fellow employees" on the day of the

accident. As the Court concluded in connection with the Fellow Employee Exclusions in the

Selective Policy, however, there are genuine issues of material fact regarding whether Mr.

Callahan was an SBS employee on the day of the accident, and whether he was acting within the

course of employment. The Court **DENIES IN PART** Cincinnati's Motion for Summary

Judgment as to Exclusion (B)(14) due to these factual disputes.

### 4. *Exclusion (B)(20)*

Exclusion (B)(20) excludes "'Bodily injury' or 'property damage' arising out of the

ownership, maintenance, operation, use, loading or unloading of any 'recreational motor vehicle'

unless such liability is covered by valid and collectible 'underlying insurance' at the 'underlying

limit' listed in Schedule A – Schedule of Underlying Insurance and then only for such hazards for

which coverage is afforded by such 'underlying insurance', unless otherwise excluded by this

policy." [Filing No. 93-5 at 16.] Cincinnati argues that it is undisputed that "Callahan's injuries

arose out of the ownership and maintenance of an RV," since Mr. Callahan and Mr. Smiley were

allegedly travelling to pick up parts from the RV surplus store for an RV owned by SBS. [Filing

No. 94 at 23.] Mr. Smiley points to the policy's definition of "Recreational motor vehicle," which

is defined as "if not subject to motor vehicle registration, any land motor vehicle designed for recreational use off public roads." [Filing No. 107 at 33 (citing Filing No. 93-5 at 11).]

The Court finds that Exclusion (B)(20) does not apply to Mr. Callahan's claims against Mr. Smiley in the Underlying Lawsuit. First, an RV is subject to motor vehicle registration and is not "designed for recreational use off public roads." [*See* Filing No. 93-5 at 11.] Second, Cincinnati has not shown that Mr. Callahan's bodily injury "ar[ose] out of the ownership, maintenance, operation, use, loading or unloading of" an RV. Even if Mr. Callahan and Mr. Smiley were picking up parts for an RV – which the parties dispute – this action is too far removed from Mr. Callahan's injuries. The Court reads Exclusion (B)(20) as precluding coverage for claims relating to the actual "maintenance, operation, [or] use" of the recreational vehicle, not claims relating to injuries that occurred while travelling to pick up parts that may be used for maintenance. The Court **DENIES IN PART** Cincinnati's Motion for Summary Judgment as it relates to the application of Exclusion (B)(20).

### 5. *Exclusion (B)(24)*

Exclusion (B)(24) excludes coverage for "Any liability or obligation of an 'insured' under a workers' compensation, disability benefits or unemployment compensation law or any similar law." [Filing No. 93-5 at 17.] Cincinnati argues that because Mr. Callahan was an employee of SBS at the time of the accident, and since Mr. Callahan and Mr. Smiley were on a business trip when the accident occurred, Exclusion (B)(24) precludes coverage. [Filing No. 94 at 24.] Mr. Smiley argues that he was not Mr. Callahan's employer, so had no "liability or obligation" under a workers' compensation law, disability benefits or unemployment compensation law or any similar law. [Filing No. 107 at 34.]

Cincinnati has not presented any evidence that Mr. Callahan was an employee of Mr. Smiley and, in fact, has consistently argued that Mr. Callahan was an SBS employee. [*See, e.g.*, Filing No. 94 at 23 (Cincinnati arguing that "both Smiley and Callahan were employed by SBS").] SBS is not an "insured" under the Cincinnati Umbrella Policy – only Mr. Smiley is. Because Mr. Smiley did not employ Mr. Callahan and so did not face any liability under a workers' compensation law or any similar law, Exclusion (B)(24) does not preclude coverage and the Court **DENIES IN PART** Cincinnati's Motion for Summary Judgment as to that exclusion.

In sum, the Court **DENIES AS MOOT** Cincinnati's Motion for Summary Judgment as it relates to coverage for SBS, since SBS does not seek coverage under either the Cincinnati Auto Policy or the Cincinnati Umbrella Policy. The Court **GRANTS IN PART** Cincinnati's Motion for Summary Judgment to the extent that it finds that Exclusion (B)(2)(b) precludes coverage for Mr. Smiley under the Cincinnati Auto Policy. Finally, the Court **DENIES IN PART** Cincinnati's Motion for Summary Judgment to the extent it finds that Exclusion (B)(20) and Exclusion (B)(24) in the Cincinnati Umbrella Policy do not preclude coverage for claims asserted by Mr. Callahan against Mr. Smiley in the Underlying Lawsuit, and to the extent it finds that genuine issues of material fact exist as to whether Paragraph 12(b)(2), Exclusion (B)(5), or Exclusion (B)(14) preclude coverage for Mr. Smiley under the Cincinnati Umbrella Policy.

**VI.**
**CONCLUSION**

As discussed above, there is no longer a case or controversy between SBS on the one hand, and Selective and Cincinnati on the other. Accordingly, the Court **DENIES AS MOOT** Selective's Motion for Summary Judgment, [Filing No. 88], and Cincinnati's Motion for Summary Judgment, [Filing No. 93], as those motions relate to coverage for SBS. All claims against SBS

are **DISMISSED**, and the Clerk is directed to **TERMINATE** SBS as a party. No partial final judgment shall issue.

Also as discussed above, genuine issues of material fact exist regarding whether Mr. Callahan was an employee of SBS on the day of the accident and, if so, whether he was acting within the course or scope of his employment when the accident occurred. These issues make summary judgment in favor of Selective, Cincinnati, or Mr. Smiley inappropriate regarding the application of several provisions or exclusions in the Selective Policy and the Cincinnati Umbrella Policy. The Court **GRANTS IN PART** and **DENIES IN PART** Selective's Motion for Summary Judgment, [Filing No. 88], SBS's and Mr. Smiley's Motion for Summary Judgment, [Filing No. 90], and Cincinnati's Motion for Summary Judgment, [Filing No. 93], as set forth above in detail.

Left in play is the potential applicability of the following provisions and exclusions to Mr. Callahan's claims against Mr. Smiley in the Underlying Lawsuit:

- The Fellow Employee Exclusions in the Business Auto Coverage and Umbrella Liability Coverage Parts of the Selective Policy;

- Paragraph 12(b)(2) in the Cincinnati Umbrella Policy;

- Exclusion (B)(5) in the Cincinnati Umbrella Policy; and

- Exclusion (B)(14) in the Cincinnati Umbrella Policy.

The Court requests that the Magistrate Judge confer with the parties to address the possibility of an agreed resolution, or to establish a schedule for the upcoming August 28, 2017 trial.

Date: May 26, 2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**